IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SANTANA TESORO, LLC,<br><br>Plaintiff,<br><br>v.<br><br>THE PARTNERSHIPS IDENTIFIED ON SCHEDULE A,<br><br>Defendants. | ) | No. 26 C 1395<br><br>Judge Robert W. Gettleman |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Santana Tesoro, LLC moves for entry of default and default judgment against 48 defendants (Doc. 37). The court has reviewed plaintiff's memorandum in support (Doc. 38) and its supplemental memorandum (Doc. 40). For the reasons below, the motion for entry of default and default judgment is denied.

**DISCUSSION**

In recent times, this court has faced a torrent of "Schedule A" cases—cases in which an intellectual property plaintiff sues many alleged infringers in a single action, naming the defendants in a "Schedule A" list. See, e.g., "Schedule A Cases Continue to Rise in the Northern District of Illinois," Lex Machina Blog, July 24, 2024 ("In 2023, 80 percent of all design patent cases filed against Schedule A defendants in the U.S. were filed in the Northern District of Illinois."); "How to Recover Attorneys' Fees in a Schedule A Trademark Case in the Northern District of Illinois," Sheppard Mullin Intellectual Property Law Blog, May 10, 2024 ("In recent years, a substantial number of 'Schedule A' trademark infringement cases have been filed in the Northern District of Illinois."). Many of the defendants in these actions are located abroad and

are thus subject to the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, 20 U.S.T., at 361–73 (the "Hague Convention"). Most Schedule A cases, like this one, culminate in a motion for entry of default and default judgment. This opinion clarifies how this court will approach default judgment in cases in which defendants are potentially subject to the Hague Convention.

The court begins with the fundamentals. If the Hague Convention applies to a defendant, then the Hague Convention governs default judgment against that defendant. See Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 705 (1988) (stating that "compliance with the Convention is mandatory in all cases to which it applies"); Bestway Inflatables & Material Corp, No. 24 C 11696, 2025 WL 1696438, at *3 (N.D. Ill. June 17, 2025) (explaining that "if a plaintiff seeks to secure default judgment against a defendant to which the Hague Convention applies, then they must successfully embark on one of the two 'routes' set out in Article 15"). Article 15 of the Hague Convention provides two sets of conditions that permit a court to grant default judgment (which are further discussed in Bestway Inflatables & Material Corp, 2025 WL 1696438, at *2–3).

Because the Hague Convention governs default judgments when it applies, the court must first determine whether it applies to the particular defendants in each case before it. Article 1 of the Hague Convention states: "The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad. This Convention shall not apply where the address of the person to be served with the document is not known." Schedule A litigation increasingly centers on the question of whether the address of the person to be served is "not known."

To govern their approach to this question, courts have developed the "reasonable

diligence" standard. Courts do not simply accept a plaintiff's ex parte representation that the addresses of defendants are not known. If that were the case, then plaintiffs could escape the framework of the Hague Convention through willful ignorance. Thus, courts—drawing from state law rules for service by publication—developed the "reasonable diligence" standard. See, e.g., Kott v. Superior Ct., 45 Cal. App. 4th 1126, 1135–36 (Cal. Ct. App. 1996) (evaluating sufficiency of service under the Hague Convention by reference to the "reasonable diligence" requirement of California service by publication statute); 735 ILCS 5/2-206(a) (permitting service by publication if "upon diligent inquiry [recipient's] place of residence cannot be ascertained").

Based on the court's research, the earliest example of a federal court applying the reasonable diligence standard in cases involving the Hague Convention is a 2011 case from the Southern District of Florida, Opella v. Rullan, No. 10-21134-CIV, 2011 WL 2600707 (S.D. Fla. June 29, 2011).[1, 2] The Opella court explained that it was "aware of no binding precedent that establishes a standard for determining when a plaintiff 'knew' the address of the person to be served, in the context of the exemption in Article 1 of the Hague Service Convention." Opella, 2011 WL 2600707, at *5. So, it drew from the standard that the California Court of Appeal applied in Kott: "an address is not 'known' within Article I of the Convention only when it is unknown to the plaintiff after the plaintiff exercised reasonable diligence in attempting to discover that address." Id.; see also Kott, 45 Cal. App. 4th at 1137–39. The reasonable diligence

[1] report and recommendation adopted, No. 10-21134-CIV, 2011 WL 13220496 (S.D. Fla. Aug. 9, 2011).

[2] In an even earlier case, S.E.C. v. Lines, 2009 WL 3179503, at *4 (S.D.N.Y. Oct. 2, 2009), the court addressed a defendant's argument that "the Convention still applies where plaintiffs 'simply do not bother to make diligent efforts to learn of a defendant's address'" by observing that "[plaintiff] did 'bother to make diligent efforts.'" This could also be construed as an application of the reasonable diligence standard.

standard thus provided a relatively simple guard against plaintiffs who would otherwise attempt to escape the strictures of the Hague Convention.

But no good deed goes unpunished. The reasonable diligence standard emerged to ensure that plaintiffs could not unilaterally avoid the Hague Convention. But now, plaintiffs in this district use it as a device to do just that.

The trouble, as this court sees it, stems from a small detail in NBA Properties, Inc. v. Partnerships & Unincorporated Associations Identified in Schedule "A", 549 F. Supp. 3d 790 (N.D. Ill. 2021). In NBA Properties, the defendants' addresses were listed on their Amazon storefront pages. Nevertheless, plaintiffs argued that the addresses were "not known" because they were unreliable and not verified. Id. at 796. The court correctly balked at this argument, finding that "[p]laintiffs did not undertake reasonably diligent efforts to ascertain Defendant's mailing address," because, of course, the addresses were easily ascertainable from Amazon. Id. But when the NBA Properties court articulated the reasonable diligence standard—perhaps responding to plaintiffs' arguments that the addresses on Amazon were not "verified"—it stated: "Before courts will accept that a defendant's address is 'not known,' the plaintiff must make reasonably diligent efforts to ascertain and verify defendant's mailing address." Id. (emphasis added).[3]

Seizing on the inclusion of the words "and verify" in the NBA Properties court's recitation of the reasonable diligence standard, plaintiffs in this district regularly argue that the

[3] The NBA Props. court cited Progressive Se. Ins. Co. v. J & P Transp., No. 1:11-CV-137, 2011 WL 2672565 (N.D. Ind. July 8, 2011), and Compass Bank v. Katz, 287 F.R.D. 392 (S.D. Tex. 2012) for its recitation of the reasonable diligence standard. Neither Progressive nor Compass Bank include "verification" as part of the reasonable diligence standard.

reasonable diligence standard requires them to "verify" each defendant's address. According to these plaintiffs, if they cannot verify the address, then it is unknown for purposes of the Hague Convention. But the effort at verification, it appears to this court, is often an effort at obfuscation. Employing a bevy of methods—some crude, some seemingly sophisticated—plaintiffs' methods of verification almost invariably result in reclassifying known addresses as unknown addresses. Thus, the reasonable diligence standard has been distorted into a device that helps plaintiffs accomplish exactly what it was designed to avoid: an easy, ex parte escape from the requirements of the Hague Convention.

This case exemplifies the issue. There are 48 defendants remaining in this case. In Exhibit 1 to plaintiff's supplemental memorandum (Doc. 40-1), there is a table titled "Address Verification Results." For each defendant, an address is listed. The following address is listed for the first defendant:

> Business Name: Fanqing Yan Xuan Department Store, Shunde District, Foshan City (Individual Industrial and Commercial Households) Address: CN, Foshan City, Guangdong Province, Shunde District, No. 34, Lane 7, Hutiandongbian Street, Fangcun, Lecong Town, 440606

The exhibit lists an address for each defendant like the one above. Yet plaintiff argues that "none of the Defendants' addresses are known," and thus "the Hague Service Convention does not apply." From a common-sense standpoint, this argument makes no sense. Plaintiff argues that defendants' addresses are unknown while providing the court with a document that contains an address for each defendant. This argument makes sense only when examined through the lens of the distorted reasonable diligence standard. In support of its contention that defendants' addresses are unknown, plaintiff argues that "none of the disclosed physical

addresses could be tied to a Defendant" after checking them "against publicly available and paid resources utilized by Plaintiff's counsel in order to verify whether it resolves to any identifiable locations associated with the Defendants."

The court rejects this distortion of the reasonable diligence standard. There is no burden on plaintiffs to "verify" each defendant's address. For purposes of the Hague Convention, addresses that plaintiffs know are just that: known. When plaintiffs, as here, have address information for a defendant, the court will presume that the defendant's address is known for purposes of the Hague Convention.

The reasonable diligence standard governs only when a plaintiff asserts that it possesses no address information for a defendant. In that circumstance, the court will not accept a plaintiff's assertion until it satisfies itself that plaintiff has made "reasonably diligent efforts to learn the defendant's mailing address." Luxottica Grp. S.p.A. v. Partnerships & Unincorporated Associations Identified on Schedule "A", 391 F. Supp. 3d 816, 822 (N.D. Ill. 2019).[4]

Beyond declining to follow an undesirable development in recent case law, the court reaches this conclusion as a matter of treaty interpretation. When a plaintiff claims that a defendant's address is unknown under the Hague Convention, the ultimate question posed is the meaning of the second paragraph of Article 1 of the Hague Convention. Interpretation of a treaty begins "with the text of the treaty and the context in which the written words are used." Schlunk, 486 U.S. at 700 (quoting Societe Nationale Industrielle Aerospatiale v. U.S. Dist. Ct. for S. Dist. of Iowa, 482 U.S. 522, 534 (1987)). Again, Article 1 of the Hague Convention states: "This

[4] The court does not adopt Luxottica's discussion of courts requiring proof of a "'reasonable investigation' of the address's validity before finding that it is 'unknown' under Article 1." 391 F. Supp. at 823–24. As explained below, the court does not interpret the phrase "not known" in Article 1 of the Hague Convention to include addresses that cannot be verified by a second, independent source.

Convention shall not apply where the address of the person to be served with the document is not known."

The best interpretation of what the phrase "not known" means must comport with the purpose and design of the treaty. See Rocca v. Thompson 223 U.S. 317, 331–332 (1912) (explaining that treaties are to be read in "the light of the conditions and circumstances existing at the time they were entered into, with a view to effecting the objects and purposes of the States thereby contracting"); see also Vienna Convention on the Law of Treaties,[5] Art. 31 ("A treaty shall be interpreted in good faith in accordance with the ordinary meaning to be given to the terms of the treaty in their context and in the light of its object and purpose"). The Supreme Court has stated that the purpose of the Hague Convention is to "provide a simpler way to serve process abroad, to assure that defendants sued in foreign jurisdictions would receive actual and timely notice of suit, and to facilitate proof of service abroad." Schlunk, 468 U.S. at 698.

In light of the purposes and design of the Hague Convention, the court reaches two conclusions. The first is straightforward: while the Hague Convention does not contain any express language imposing a reasonable diligence requirement, the only reasonable construction of "not known" in Article 1 is that the Hague Convention does not apply to situations in which a defendant's address is unknown and cannot be ascertained despite reasonable diligence. See Kott, 45 Cal. App. 4th at 1136–39. Otherwise, the Hague Convention would be rendered practically useless. This is simply what the court has already described as the proper reasonable diligence standard.

[5] The Vienna Convention on the Law of Treaties, although never ratified by the United States, is regarded as customary international law and its principles are consistently applied by U.S. courts even absent ratification. See Restatement (Fourth) of Foreign Relations Law § 306 (2018).

The second conclusion is that it is unreasonable to interpret the clause in Article 1, as plaintiffs would have it, to mean that the Hague Convention does not apply to situations in which the address of the defendant is known, but the plaintiff cannot verify that address through a second, independent source. This interpretation has no textual support and frustrates the ultimate purpose of the convention, which is to provide a simpler way to serve process abroad.

The second, independent source interpretation layers a complicated preliminary process on top of the Hague Convention, wherein plaintiffs must undertake expensive investigations that local courts must evaluate, before the rest of the service protocols specified in the Hague Convention can commence. This process is not specified in the text and makes service under the Hague Convention more complicated and costly. Nor is the Hague Convention silent on the process by which it is intended to operate; it specifies a procedure for service that is organized around each signatory's "central authority." See Hague Convention Arts. 2–6. The "central authority" is entrusted to forward service of process to defendants within its borders. See Hague Convention Art. 5. The central authority, not the plaintiff or local courts in the plaintiff's home country, is the institution that the Hague Convention entrusts to navigate the delivery of service documents to the addresses of defendants within its own country.[6] This design makes sense. Local courts in the plaintiff's home country are ill-equipped to evaluate foreign addresses. The second, independent source interpretation of Article 1 contravenes this design and is largely unworkable in practice.

[6] The court also notes that the Hague Convention is not silent about local courts' role and prescribes specific duties to them. See, e.g., Art. 15 (specifying when judgment can be given); Art. 16 (specifying when a court can relieve a defendant from judgment). This supports the inference that if the drafters of the Hague Convention intended that local courts play a central role in determining whether defendants' addresses are valid, it would be reflected in the text. Cf. Russello v. United States, 464 U.S. 16, 23 (1983) (explaining in the statutory context that "[w]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion").

The unworkability of the second, independent source interpretation of Article 1 is well-illustrated here. Under that interpretation, this court is required to evaluate ex parte plaintiff's efforts at independent address verification. This is what plaintiff asks the court to evaluate regarding the veracity of the first defendant's address (the same one discussed above):

> No official registry result or independent source confirmed the exact business/address pairing; transliteration and incomplete locality details may limit searchability. Live exact-name and exact-address searches were performed. No reliable indexed source confirmed the seller name, legal business name, and exact address together. Any address or business name searches did not produce a reliable association was not verifiable from accessible public sources. Based on available public information, this address appears to be a real local street address in an older village/neighborhood within Lecong Town, Shunde District, Foshan, no public business registration or directory listing specifically identifying No. 34, Lane 7, Hutiandongbian Street, Fangcun as an established commercial business location. No reliable indexed association found. **ADDRESS REMAINS UNKNOWN.**

The court can understand little of what any of this means, no less impartially evaluate it, because this lies far outside the court's realm of expertise and it is offered outside of the adversarial process. See generally San Antonio Indep. Sch. Dist. v. Rodriguez, 411 U.S. 1, 41 (1973) (acknowledging that "the Justices of this Court lack both the expertise and the familiarity with local problems so necessary to the making of wise decisions with respect to the raising and disposition of public revenues"); Edgar v. K.L., 93 F.3d 256, 259 (7th Cir. 1996) (explaining that "knowledge gained in a judicial capacity" is knowledge that "enters the record and may be controverted or tested by the tools of the adversary process"). The Northern District of Illinois is

ill-equipped to act as an independent expert on the veracity of addresses in China, a nation of 1.4 billion people comprised of 28,399 townships and towns that uses a logographic language not easily translatable to English. See generally Zhenwei Peng, Li Zhang, Shuting Dong & Wenqi Li, The Importance, Orientation and Key Content of Township-Level Comprehensive Spatial Planning in China, 1 *Frontiers of Urban & Rural Planning*, art. 10 (2023) (citing official Chinese language sources).

As an institution, courts cannot realistically evaluate plaintiff's ex parte verification efforts in a meaningful sense. Yet the second, independent source interpretation would require courts—not just US courts, but courts across the world in every signatory nation—to do just that for each defendant that is potentially subject to the Hague Convention. This cannot be the proper interpretation of Article 1 of the Hague Convention because it "leads to an absurdity." Smith v. State, 10 U.S. 286, 294 (1810) (stating that "no construction of a treaty is to be admitted which leads to an absurdity, or renders the treaty null and without effect").

The negotiating history of the Hague Convention also supports the court's approach here. See Schlunk, 486 U.S. at 700–02 (analyzing the negotiating history of the Hague Convention to interpret Article 1); see also Air France v. Saks, 470 U.S. 392, 396 (1985) (explaining that "[t]reaties are construed more liberally than private agreements, and to ascertain their meaning we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties").

The preliminary draft of Article 1 did not include the second paragraph containing the "not known" provision. Conférence de la Haye de Droit International Privé, Actes et Documents de la Dixième Session, Tome III (Notification), at 65 (1965) ("3 Actes et Documents"). The official report of the drafting committee shows that the provision was adopted to address the

issue of addresses that are entirely unknown, as distinct from the issue of addresses that are known but potentially incorrect:

> "**The President** reminded the Commission that two problems had been raised during the discussions and referred to the Drafting Committee. The first concerned the non-application of the Convention when the defendant's domicile was unknown. The Drafting Committee, having met that same morning, resolved the question by supplementing Article 1 with a second paragraph:
>
> > *The Convention shall not apply where the address of the person to be served with the document is not known.*
>
> Another question was to determine the stance to be taken by the authority responsible for service on a person whose address is incorrect …" 3 Actes et Documents, at 293.[7]

The drafters of the Hague Convention separated the problem of unknown addresses from incorrect addresses. The second paragraph of Article 1 was a solution to the former, but not the latter, problem. The parties never reached a formal agreement about how to solve the "address is incorrect" problem. Nevertheless, "[i]n practice, the Central Authorities of member states frequently render assistance where the address given by the requesting authority is incomplete or inaccurate, or where there has been a change of address." 1 B. Ristau, International Judicial Assistance (Civil and Commercial) § 4–1–4, at 156 (2000); see also Schlunk, 486 U.S. at 698,

---

[7] As another court has noted, the Convention's negotiating history "has only been published in French." Hyundai Merch. Marine Co. v. Grand China Shipping (Hong Kong) Co., 878 F. Supp. 2d 1252, 1258 n.5 (S.D. Ala. 2012). It is available in the original French at https://assets.hcch.net/docs/b6304b87-d5ee-4020-8587-c22ae19ec002.pdf. In Schlunk, "[t]he Supreme Court undertook the task of translating the Convention's negotiating history." Hyundai Merch Marine. Co., 878 F. Supp. at 1258 n.5. Faced with the same task, this court utilized Claude (Sonnet 5) and Google Translate. The formatting is intended to reflect the original source format.

700, 703 (citing Ristau). In sum, both the structure and drafting history of the Hague Convention cut strongly against reading "not known" under Article 1 to include addresses which are known but which allegedly cannot be verified by an independent second source.

While the court is bound to a faithful reading of the Hague Convention, it understands the practical issues at play and has little sympathy for a vast majority of defendants in Schedule A cases, who are mostly counterfeiters from abroad that operate through networks of elusive online shops. Conducting service by the methods provided for in the Hague Convention can be fruitless. See Luxottica, 391 F. Supp. 3d at 824 (wherein plaintiffs submitted "an affidavit filed in a case in Delaware averring that China's central authority takes one to two years to serve process"). The court is also aware of the allegation that some defendants in Schedule A cases intentionally provide fictitious addresses.

But the Hague Convention offers a solution for plaintiffs who serve through the Convention and do not receive a timely response: it authorizes default judgment beginning six months after service documents are transmitted. See Hague Convention Art.15. Considering the practical reality that most defendants in Schedule A cases are subject to temporary asset freezes, there is little reward for defendants who purposefully obscure their addresses. The court also observes that while plaintiffs may be required to serve through the Hague Convention, nothing forbids plaintiffs from attempting to contact defendants through alternate means. The temporary asset restraint is often what first draws defendants' attention to the case and incentivizes their participation. For defendants who seek to litigate without being slowed down by the Hague Convention, "it should be remembered that a person or an entity can consent to receive service of process in a manner that deviates from Rule 4 or can waive notice and service altogether." 4 Charles Alan Wright & Arthur Miller, Federal Practice & Procedure § 1062 (4th ed.).

Returning to the present case, the court rejects defendant's argument that "none of the Defendants' addresses are known….[and] [t]hus, the Hague Service Convention does not apply." Plaintiff's exhibit clearly lists addresses for all defendants. Thus, the court finds that these defendant's addresses are "known" for purposes of the Hague Convention.

The court observes that plaintiff's exhibit lists addresses located in the United States for five defendants (Defs. 23, 34, 42, 45, 50). Because these defendants are in the United States, they are not subject to the Hague Convention. See Hague Convention Art. 1 ("The present Convention shall apply in all cases, in civil or commercial matters, where there is occasion to transmit a judicial or extrajudicial document for service abroad"). The court grants plaintiff's motion for entry of default and default judgment against the five US defendants.

Because the other remaining defendants are based abroad and their addresses are known, they are subject to the Hague Convention, and "compliance with the Convention is mandatory." Schlunk, 486 U.S. at 705. Article 15 of the Hague Convention permits this court to enter default judgment only if, among other requirements, "the document was transmitted by one of the methods provided for in this Convention." Plaintiff has not transmitted service documents by one of the methods provided for in the Convention. Consequently, the motion for entry of default and default judgment (Doc. 37) is denied as to the China-based defendants.

## CONCLUSION

For the above reasons, the motion for entry of default and default judgment (Doc. 37) is granted in part and denied in part. As for the US defendants (Defs. 23, 34, 42, 45, 50), the motion is granted. Plaintiff is directed to submit a proposed judgment order for the US defendants on or before September 4, 2026. As for the remaining foreign defendants, the motion for entry of default and default judgment is denied.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: August 28, 2026**